Good morning, your honors. Paul Musicki on behalf of the people of the state of Illinois. I'm an assistant state's attorney. Does the appellant want some time for rebuttal? Yes, four minutes, please. Okay, let's proceed. Thank you very much, sir. And am I correct if I may unmask her? Yes, you may. May it please the court, good morning again. I'm Deborah Lobey from the Exoneration Project on behalf of the appellant Jimmy Soto. I'd like to focus my argument this morning on the conflict of interest claim, but I'm happy to take questions on any issue. Not one of the over 30 witnesses from the park who were interviewed by the police immediately after the shooting saw Mr. Soto even at the park, much less with a weapon or committing this crime. Numerous witnesses, however, saw implicated teenager Victor Rodriguez as the handgun shooter. The targets of the shooting, who previously knew Victor from school, contemporaneously reported that he was the shooter, and multiple bystanders, including one who was only 15 or 20 feet away, who previously knew Victor, also implicated him contemporaneously. You know, we have read the facts of the case, and I want to ask you this question. How is the trial counsel's conflict of interest claim that Soto raised in his 2015 successive petition different from the claim that he raised in 1991? Well, two responses, Your Honor. First of all, at the time when he originally tried to raise the claim in 1991, it was unknown the extent to which this conflict existed. Mr. Soto learned later after his trial that his counsel represented Victor at the police station, but it wasn't until he later received the case files that he learned that actually his attorney continued to represent Victor in the murder case on the exact same charge that Mr. Soto had all the way into November after counsel began representing Mr. Soto. So was this in the successive petition or not? Yes. I thought the State is contesting whether you're raising something for the first time, like a variant on the conflict. Am I wrong? Maybe. Respectfully, these cases were consolidated. Counsel for Mr. Soto adopted the petition of Mr. Ayala. It was articulated more clearly in that petition, but it's very clear on the record that they were proceeding as they were proceeding on both claims. There are numerous points within the record, citations in the brief that tell you that his counsel adopted that petition. Mr. Soto has been victimized by terrible lawyering since day one. Okay, but let's go back to the conflict claim. Yes. There was a decision issued by this Court in 2013. Was the conflict raised at all at that time? The conflict has never been adjudicated. So the conflict has been in the petitions along the way. It has never been actually adjudicated. So when it went back on that 2013 order, it hadn't – it wasn't resolved at that point? The petition keeps getting dismissed on other grounds. There's never been – there's never been a court that's actually sat down and looked at this question. Is this a per se conflict of interest? When counsel represents the former accused turned State witness, and in this case Victor was absolutely listed on discovery as a prosecution witness. He had a front and center view of this murder, according to all – But that he was removed from the list. Not until the very eve of trial. He was listed as a discovery witness, according to multiple witnesses, including the State's only witness, Wally Cruz. Victor was present in the gangway during the shooting. So he would have been not just any witness, but a key witness. And the case law is very clear that it doesn't matter whether or not he actually testifies. And Illinois Supreme Court made that abundantly clear in Hernandez, which involved, mind you, John DeLeon, the exact same defense counsel. But also there are several other cases that talk about it. It's the fact that counsel has overlapping commitments that matter, not whether or not Victor ultimately testifies, or whether the State at the last minute doesn't want to subordinate perjury and put him on. The State is not allowed to – the gamesmanship of whether or not they call him is irrelevant to the question. What the question is, is did counsel have overlapping commitments? And in this case, we know that John DeLeon went to the police station with Victor Rodriguez in October. That after going there with Victor, he then goes to the police station with Mr. Soto. Mr. Soto retains him. He's not told of this conflict. In November, Mr. DeLeon continues to represent Victor. And that's the fact that it was unknown at the original PC petition because it was a juvenile record. So it was closed. We were only – Mr. Soto was only able to get that much later on. So there's overlapping continued representation. And counsel throws Mr. Soto under the bus. He does not call numerous witnesses who saw that Victor was the one who committed this crime. And these are strong witnesses. This is, you know, someone from 10 or 15 feet away who knew Victor from school, who contemporaneously made the identification. This is one of the victims who chases Victor. And Victor turns around and fires at him. I mean, these are really strong witnesses contemporaneously. And counsel doesn't even bother to put them on on behalf of Mr. Soto. So while the State has thrown all sorts of procedural bars, and I'm happy to talk about any of them if the Court has any procedural concerns, I really want to discuss them because I don't want to see justice thwarted by a procedural detail that this Court is not bound by, frankly. I mean, this Court has the discretion to overlook any of them. But I'm happy – I don't think we have any procedural problem anyways. And I really invite questions if there are concerns because justice is on the side of doing something about this conflict. We have a man who – the only witness who ever accused him is Wally Cruz. Wally Cruz had the deal of the century. He got out of a double homicide where multiple witnesses saw him as the shooter and instead serves two and a half years, half of it in witness quarters. He's the only person who ever even put Mr. Soto at the park. The jury heard all that. They heard about his spectacular deal. They heard about that there were a number of witnesses who said there was never any meeting whatsoever. They heard all this, and they heard Cruz. So I'm not sure we need a rehashing of that. I just want – I emphasize it for the interest of justice at this point. I understand. This Court should have serious concerns about whether – about this conviction regardless. And then there is no question that when you have a per se conflict of interest, the relief is reversal, not just to the post-conviction petition, but of the conviction itself. The State does not contest this remedy in their brief. And the authority – They contest whether this is a per se conflict. They contest whether it's a per se conflict, but they don't contest that if this Court agrees it's a per se conflict, that the remedy, according to Yost and all of Yost's predecessors, is reversal of the conviction. And that's what I'm hoping for here. And I emphasize the innocence evidence just because what I really am hoping for is for an emphatic and a prompt ruling that will grant a new trial in this case. Mr. Soto has been in prison for two-thirds of his life. He's served 40 years, and this wait has been way too long. And so if this Court agrees on the per se conflict of interest, the remedy is a reversal of the conviction, and we're asking for that to be a quick one, respectfully, if this Court would do so. And the State doesn't really – doesn't contest that remedy. So if the Court has any questions again or concerns about the remedy, I certainly invite those because I think this is really important that we address any of the concerns. To me, this is a very clear-cut case. It's one in which, for the only time in my career, I asked the State to confess error on a substantive issue like this. I think it's that clear-cut. And I really welcome this opportunity to see if the Court has questions about the existence of the conflict or the remedy that is appropriate. And if not, I'll just remind the Court that, you know, if the Court disagrees on the per se conflict, there's certainly ample grounds for an evidentiary hearing. This is a second-stage dismissal. A third – at a bare minimum, a third-stage evidentiary hearing is warranted on the actual innocence claim, on the Brady claim, on the actual conflict of interest, counsel's failure to call all of these witnesses, on ineffective assistance of counsel for not calling all the witnesses who saw that Victor committed this crime. Did the State argue that the Brady claim was raised? Now, is that the one where they said that you didn't raise – that the Petitioner never raised it, but you're raising it? That's correct. The Brady claim is the one where, I'm arguing, the post-conviction counsel was ineffective. It is so clearly articulated in these – in this petition. And, Mr. Soto – I thought this was the issue about all the witnesses that said that they were charged and they were charged with obstruction, and then the case – it came out during the testimony, and then the judge offered a continuance, and then the next day they came back, and then the cross-examination continued. That's Mr. Ayala's claim, and that's the argument immediately following mine that just got separated from this. Yes. Did you raise – did he raise this in his petition or not? You know, there's multiple Supreme Court cases that say that attorneys can't start raising things for the first time in their brief. Now, either you did or you didn't. And the evidence is there. Post-conviction counsel neglected to put it in there, and like I said – All right. So you're saying that post-conviction counsel was ineffective because it didn't raise the Brady claim. Correct. But so are you conceding that Petitioner did not raise the Brady claim? The Brady claim, as we raised it in the appellate brief, I am conceding was not raised in the brief below, but I would – if this Court does think the appropriate remedy is a third-stage evidentiary hearing, I think that it was amply within there and it should be included along with the actual innocence claim, the actual conflict claim, and the ineffective assistance claims. All right. I guess I'll reserve the remainder of my time for rebuttal. Okay. Thank you. Okay. Let's hear from the State. To start off with, I want to ask you a question. The State raises race judicata and forfeiture against Soto's trial counsel conflict of interest and Brody claims – Brady claims. But these doctrines are not absolute. Why doesn't the fundamental fairness exception apply here? Well, we're not – let's see. In terms of the per se conflict of interest claim, he raised that in his 1991 petition. That 1991 petition was dismissed on the merits. It was appealed and it was affirmed. That terminates the claim. He resurrected it in his 1998 petition based on police reports. The claim today is those police reports weren't available until his 2015 successor petition. That's not what the record shows. That claim was adjudicated through – or that petition, that entire petition was adjudicated through the post-conviction process and the dismissal was affirmed. Where fundamental fairness comes in in the context of a situation like this is actual innocence and death penalty. That's what Pistenbarger says. And that takes us to the cause and prejudice test and the underpinnings of the cause and prejudice test, which is another problem that Mr. Soto cannot overcome in this case. Even if – even if he adopted the petition filed by IALA, and I don't see any case law supporting that one defendant can simply adopt someone else's petition, you need to put – you need to make your claim under the Act in your own petitions. You have to allege your constitutional deprivations on your own. But be that as it may, one of the important considerations here or the distinguishing factors is that Mr. IALA was proceeding on his original petition. Mr. Soto was on at least his first successor petition, depending on how you interpret the 1998 petition. So the cause and prejudice requirement is not waivable. It's not optional. It is statutory, as Pistenbarger pointed out. Even when there's a claim of actual innocence? Except as to the claim. When we're talking about a – all right, let me say it this way. Cause and prejudice, of course, is not required for an actual innocence claim. But in a successive petition, each claim has to be viewed independently. It's not like the first original petition where – The conflict claim doesn't get to piggyback on actual innocence. Isn't that what you're saying, that you have to establish cause and prejudice if you're trying to resurrect or maybe not resurrect council claims that's being raised, it was raised, but not raised judicata, not something that could have been raised or that was actually decided previously. But as far as the claim itself, when there's a claim of a conflict, you don't get to use the actual innocence concept to piggyback on all sorts of other claims. Thank you for articulating the argument that I was trying to articulate. Thank you for doing that. That's exactly the point I'm trying to make here today. Each claim has to be viewed separately. Actual innocence is in its own compartment. And why isn't there an actual or a per se then claim? Okay. There is not a per se conflict of interest because Mr. Rodriguez did not testify for the state. It's really that simple, the Morales case says. And it's holding there was because the witness was never called to testify at trial, the defense attorney never represented a witness for the state. And ironically, the witness in the Morales case, a guy by the name of Hernandez, and he had been represented by defense counsel who also represented the defendant at trial. Hernandez wrote a letter that was actually introduced at sentencing in Morales' case. But do you have a case to support that theory? The Morales case, the Supreme Court case we cite in our brief. It's not the same set of facts. It goes to the core issue. Any distinguishing between the role of Hernandez in that case and the role of Rodriguez case. The point is they have a conflict of interest. The fact that the other person didn't testify at trial, what does that have to do with anything? That has everything to do with it. That's what Morales says. Unless that witness testifies at trial, defense counsel never assumed the role of attorney for witness for the prosecution. Again, we're talking about per se conflict. So the Supreme Court has narrowed that. In fact, after Hernandez, which involved a victim case, which is totally distinguishable, because a victim is still involved in the trial. After Hernandez, the Supreme Court in Yost looked at the three prongs of the per se, the three types of per se conflicts raised, and it actually constricted with what Hernandez said. It said a contemporaneous, a struck prior, a contemporaneous. And that's what the case is. Putting aside the per se, Ms. Lovey is also arguing that under this actual conflict, that Mr. DeLeon didn't call any of these witnesses who could have pointed to someone else as the offender, specifically his client that had been charged as a juvenile. Then those charges were dismissed, and then he was listed originally as a witness. Right. Right. I understand. And how do you get around the actual? Well, I think the way we get around it is that there's actually nothing in the record to support the underlying proposition that these other witnesses fingered Victor Rodriguez. That's just not what they say in the police reports and everything else. And what did they say? What they say is, after the shooting, I ran into the gangway, and I saw some people running around with guns, and one of them shot at me. And I recognize one of those folks as Vance Victor Rodriguez, who I went to high school with. One of the guys says that. I'm kind of confused about the facts as far as the original trial. Were these shots that were fired multiple shots? Were they coming from an alley, or were they somewhere else? Because Victor Rodriguez is in an alley at some point, isn't he? Well, yeah, right. So you picture this. You've got a Chicago park. Right. You've got a street. Yeah. And then you've got a line of homes. Okay. We've probably all got a park like that in our neighborhood, right? Right in the only neighborhood. So the park is on Keeler, and then you've got Cadvale. The alley between Cadvale and Keeler is where Vance Victor and Rojas parked their car and where Cruz parked the van. So they're basically in the same alley. They're in the same alley. They ran into each other as the van was on the way to the park. Is this where the shots supposedly came from, the alley or elsewhere? Elsewhere. So what happens is Palamo, and I don't know, I may be mispronouncing his name, and Soto, according to Cruz, ran down the gangway in between homes on Keeler, and he heard shots fired at that point after they had run down gangways. Then they came running back and jumped in the van, so we may have hit somebody, and they take off. What we know is that J.J. Rojas and Van Victor were apparently milling about during all this because they encountered Cruz, saw them in the alley when they got there, and they had their guns out and all this other kind of stuff. But the way the evidence came in at trial and what it showed and the inference to be drawn, what the jury concluded, is that when Soto and Palamo ran down the gangway with those guns, they fired those guns into the crowd, and we know at least two shots were fired. We know at least three shots were fired because we have two fatal shootings and one nonfatal. So that's how the facts showed up. Now, what happens after that? So Mullins, Abraka, the witnesses that say, we saw Fab Victor, what do they say? I mean, obviously nobody was expecting shots. All of a sudden shots ring out there. We hit the ground. We thought after the shooting stopped, we tore off in a direction where we thought the shots came from, and it's only then that they see Fab Victor, and they say they see him jump into the back passenger side of a car, of a city. Cruz, remember, testified that his guy jumped in a van. Then you have, I believe it was Suarez, who said, I heard what I thought were firecrackers going off, and then I looked toward where the noise came from, and I saw Fab Victor in the gangway. She didn't say I saw Fab Victor with a gun. She didn't say I saw Fab Victor fire a gun. So not one of these witnesses is able to directly implicate Soto. So that's why there's no actual conflict of interest here, because where the defense went with the case was, look, this case is a bunch of hooey because it's all pinned on Cruz, who we know is a liar. How do we know that? Because we have shown you throughout this trial that he has told you lie after lie after lie after lie, and you can't convict based on lies. That was their theory of defense. Calling witnesses to essentially confirm elements of his testimony would have been contrary to that defense theory, particularly when they didn't have a witness who could flat-out say, I saw someone else do it, or I saw everyone that was back in that alley and James Soto wasn't there. They didn't have that witness. The best their witnesses could do, ultimately, was corroborate what the jury already heard from Cruz. Yeah, but isn't this conflict of interest really dual loyalties here? Isn't that what it is, Mr. DeLeon, that a tie to a person who would benefit from Soto's conviction? Well, that's a general proposition that underpins the conflict of interest rule. I mean, it kind of defines what a conflict of interest is, but it's not the rubric applied to analyze whether there was an actual or, in particular, a per se conflict in a particular case. Well, isn't it true that the tie between Counsel and Mr. Rodriguez in this case was even stronger than that between Mr. DeLeon and the victim in Hernandez? We don't have any idea of how strong the tie or what was between Mr. DeLeon and Mr. Rodriguez. I probably should finish a thought before going on to the next one. Well, that could all be worked out in the third stage. Right, but you have to get there. So your evidence at the second stage has to get you there, and the evidence in this case does not get you there or did not get Mr. Soto there because what we do know is that everything cuts off well before the trial, and what we do know is that a conflict of type requires a contemporaneous relationship, a contemporaneous relationship, and we don't have any showing of a contemporaneous relationship between Rodriguez and DeLeon. I mean, if a lawyer could never, if he represented one person, could never represent somebody else that some prior client had been tangentially involved with, defense lawyers would be out of business in his city and probably a lot of other places, but that's not the point. So what the court recognizes, what the case law recognizes, is that it requires some kind of contemporaneous. It also requires a showing that, right, the defense was affected, that some theory, some highly plausible theory was not advanced as a result of this conflict, and that can't be met here either because the evidence of this so-called alternative theory, that Victor was the shooter, even if you support a, even if that creates some kind of inference that he may have been a shooter, it doesn't eliminate Soto. It doesn't exonerate him. It doesn't make it any less likely, any less probable that Soto was also a shooter. And I think here the test is, you know, tied to a person who would benefit from the conviction, and this man would benefit from the conviction. That's not, but with all due respect, Your Honor, that's not a test. That's not the test the court has devised. That is the underpinning, that's the logic. That's the underlying rule or why we do the conflict analysis, why we move into a conflict analysis. The court feels and subsequently has made clear the justification for the rule is not the rule itself. It's not, and again, the court has talked about in the context of per se conflicts, this whole concept of the time. You know, and they point out that in Morales, the court brought up this whole concept about benefiting from a person. Well, in Morales, the tie between Mr. Deleon and Rodriguez is even stronger than that between defense counsel and the named state witness. I don't think, I thought that the other case was called Hernandez, where Mr. Deleon was the attorney. The Hernandez case, of course, is a situation where the tie between Mr. Deleon and the victim was much stronger because Deleon was, he was counsel of record for the victim at the time the defendant was tried. Okay, but the reason that that doesn't help Mr. Soto in this case, why Hernandez doesn't help, is because that was a victim case. And that went to per se conflict, and that's what the court was ruling on. From a witness for the prosecution standpoint, that's a separate category. Remember, you've got the three categories. First category is victim, entity that is assisting the prosecution, which they kind of tried to throw in now, but the court has ruled that out. The field says an entity means an organizational client. And then the second category is you have witness for the prosecution. The third category is essentially former prosecutor who worked on the case. So as the trial court recognized, circuit court recognized, you can get rid of the first and the third, and we only zero in, in this case, on the second per se issue, which is witness for the prosecution. And Morales answers that question for us hands down. Because Rodriguez never testified, Mr. Deleon never assumed the role of counsel for a witness for the prosecution. That dispenses with that. And then we move to the actual conflict, which I think is more fact-based, right? You've got to take a look at the facts in a broader sense. And the record just doesn't bear out the facts as they're represented in the arguments of counsel. The facts just aren't there. These witnesses did not affirmatively identify that Victor Rodriguez as one of the two shooters who fired into the park. They had fired, they identify him, and quite frankly, I forget which was Mullins or Abraka, who said, the guy shot at me, but this was well after the shots were fired in the park. Because remember, you know, when the shots were fired, they hit the ground. When the shotting stopped, it's only then that these Abraka and Mullins got up and started running across the street, running across the lawn, running up the gangway, running into the alley. So what it lasts, 150 feet, another, you know, 50, 75 feet to cross the street. I don't know how deep they were in the park. This is going to take several seconds before they would encounter the folks in the alley. And it's only when they encounter the folks in the alley now, I mean, for all intents and purposes, well after the shooting that caused the deaths and the injury here, that is when fat Victor is encountered by these witnesses. Well, the relationship between the Leon and Soto certainly would trigger the per se rule. I mean, you wouldn't be able to determine that unless you had a third stage hearing. I don't see how you can say that it doesn't apply. It doesn't. The per se rule does not apply because Rodriguez did not testify for the prosecution. That is the end of the analysis in this case. There's no case that holds that. There's no logic to it. Your Honor, I'm sorry, I don't mean to interrupt you, and I certainly don't mean to argue with you. That's all right. We're discussing the case, and that's the way we do it. I'll just argue at you. That's fine. Morales is directly on point. It's the actual holding. I think I have a quarter here, if I may take a moment. The times were not as strong in those cases of Morales and Hernandez as this case. You know, this man benefited from Soto's conviction. To me, that's the key. Well, with all due respect, that's not the test that our Supreme Court has laid out. It's just not the test. It's not. I'm glad to hear your arguments. Have we reached my time? It's all right. Okay. So unless there are further questions, I would ask that the Court affirm the dismissal of Mr. Soto's successive petition. Thank you. Let's hear the rebuttal. Hello again. Counsel keeps conflating the per se and the actual conflict, and I want to make sure that we're really clear on the difference, because with a per se conflict, it's an automatic reversal of the conviction. It's a new trial, which is the point at which Mr. Soto is at, because he has proven a contemporaneous relationship between his attorney and a witness for the prosecution. Victor Rodriguez was a witness in the same case while being represented by Mr. De Leon. And when you get that per se conflict, we don't need to talk about the other. Well, does it mean anything, then, that there was never any testimony, Procord, the person was withdrawn from the state's list, and you're saying he was a witness for the prosecution? He absolutely. And this Court can say he was named in an earlier answer to discovery. He is a witness for the prosecution. I don't know where you're getting that from. He's listed in the discovery. What case says that if you list someone somewhere along the way? Hernandez. Hernandez is an Illinois Supreme Court's case. Did that witness testify in Hernandez? I don't – I believe not, because the holding in Hernandez, and the holding in Hernandez was that it's the overlapping commitment that matters, not the fact of the testimony that matters. And there's also Lawson and Woditke, W-O-I-D-T-K-E. And forgive me, I don't remember which – in which case – I know that the witnesses did not testify in all of those cases, and I don't want to misspeak as to which one is which. But these cases talk about the fact that it's the overlapping commitment, the fact that counsel has somebody that he's willing to protect and somebody he's willing to throw under the bus that matters, not whether or not that witness actually at the end of the day testifies. And Victor is not some minor witness on a list of 20. Victor is a key witness. But in Hernandez, our Supreme Court found a per se conflict of interest where the liaison represented the victim years prior to trial on tangentially related charges and only failed to withdraw as the victim's counsel because the victim fled the country. That's far less egregious than what de Leon did here. I mean, that's a pretty attenuated relationship. And the Illinois Supreme Court found a per se conflict of interest. Here, you have de Leon representing the accused. You know, a half dozen witnesses see Victor commit this crime, and de Leon is representing Victor and throwing de Soto – or throwing Soto under the bus to protect Victor. It's far more egregious than Hernandez. And in Hernandez, it was a per se. Kennedy. Well, we don't know whether he threw him under the bus or not unless we have a third stage hearing. I mean, I don't know that you could say it's a per se conflict and we should just give a new trial. Those determinations would have to be made. Respectfully, it's the actual – the actual conflict is when you have to have the hearing to figure out whether or not there was – it affected the way in which the case was litigated. When you have a per se conflict, and the case law is very clear on this, and I urge you to go back and look at Fields and Yost, that when there's a per se, the facts of the case don't matter. We don't have to prove any kind of prejudice for a per se conflict. Turning the right to conflict-free counsel, the Sixth Amendment right, is implicated. This is a – his very right to counsel has been prejudiced in this case, and so you don't have to get to the facts. The place where you get to the facts is when there's an actual, not a per se conflict. And that's why the Court distraught that distinction. It has a very limited situation in which you have a per se conflict, because in those cases, it is automatic reversal. And I can quote you from Yost. So you're saying the relationship itself was a per se conflict? Absolutely. Absolutely. And when you have that situation, the case law on Yost is very clear, a per se conflict – that when you have the per se conflict, that it requires automatic reversal. Automatic reversal is the language that they use. And Yost, and in the cases that precedes it, that that's a situation where you don't get into the prejudice. That's a situation where his right to counsel has been violated. He did not have counsel that was representing him. He had counsel that was conflicted, and therefore, he's entitled to an automatic reversal. And the Illinois Supreme Court case and the cases preceding Yost are very clear on that. When you get to the actual conflict question, that's when you get to the factual stuff. And the State is vastly overplaying its hand in this case. The witnesses are far stronger than counsel is saying. They absolutely do finger Victor as the shooter. But none of that matters for the per se conflict. If you get to a per se conflict, you don't have to look at it. And if you do get to an actual conflict, then absolutely there's an evidentiary hearing. You know, counsel's spin on trying to downplay the implication of Victor is something that would be resolved in an evidentiary hearing. These witnesses would testify. They'd be cross-examined. And that would be the question. But what I'm really urging the Court here is that an evidentiary hearing is not what's required, that the law on actual conflict versus per se conflict, that this falls on the per se side of things. And so I'm just trying to really quickly see if there's anything else that the Court raised that I want to make sure of. Oh, just briefly on the cause and prejudice issue. The State conceded on the record, and there's a citation in the brief, that cause and prejudice was met. To the extent that they are trying to argue any error here at this point, that error would be invited. It's not a bar to this Court, and it's certainly not one on the justices of this case that this Court should suddenly allow them to raise for the first time on appeal. So that one is absolutely the affirmatively on-the-record State that the cause and prejudice has been met. And I'd like to – and that's the record below. The citation is in the brief. Were there any further questions on the procedural? Or I can sum for the Court. I just want to remind the Court that, you know, Mr. Soto has now served over 40 years. He survived COVID in prison. He's in his 60s. He graduated from college a couple of weeks ago. He is, you know, a man who has a life. He's a poet. He's a scholar. He's a friend to many. He has family. And he has waited far too long. And that's why I'm really trying to urge the Court to look at the rules on per se conflicts and that this is an automatic reversal situation. Mr. Soto should get a new trial. Thank you. Thank you for giving us a very interesting case.  The arguments were very good. And you'll have a decision chart in a minute.